UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

JANICE RENEE MORGAN,

                *Plaintiff*,

  -against-                        **MEMORANDUM AND ORDER**

                                          18-CV-2880(KAM)

COMMISSIONER OF SOCIAL SECURITY,

                *Defendant*.

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

           Plaintiff Janice Renee Morgan ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or the "Commissioner"), which found that plaintiff was not disabled, and therefore not entitled to disability insurance benefits under Title II of the Social Security Act (the "Act").  Plaintiff moved for judgment on the pleadings, contending that the Administrative Law Judge ("ALJ") failed to follow the treating physician rule in weighing the medical opinion evidence, and as a result, the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence.  Defendant cross-moved for judgment on the pleadings.

           For the reasons herein, plaintiff's motion for judgment on the pleadings is GRANTED, the Commissioner's motion

is DENIED, and the case is REMANDED for further proceedings
consistent with this Memorandum and Order.

## Background

On September 18, 2013, plaintiff went to the emergency
room, complaining of shooting pain in both of her legs,
reporting that she fell on her knees while at work two weeks
earlier.  (*See* ECF No. 20, Administrative Transcript ("Tr."), at
310.)  In October 2013, plaintiff began treatment with Dr.
Gautam Khakhar, a physical medicine and rehabilitation
specialist.  (*Id.* at 722-25.)  Dr. Khakhar treated plaintiff's
pain in her neck, lower back, and bilateral knee joints.  (*Id.*)
Plaintiff consulted several more times with Dr. Khakhar in 2013,
and continued to do so throughout 2014, 2015, and 2016.  *See
generally* ECF No. 19-1, Stipulated Statement of Facts
("Stip.").)

Also beginning in October 2013, plaintiff sought
treatment from Dr. Barry M. Katzman, an orthopedic surgeon, to
whom she complained of pain from her neck to her shoulders.
(Tr. at 335-36.)  Plaintiff visited Dr. Katzman several more
times from 2013 through 2016.  (*See generally* Stip.)  Among the
treatments performed on plaintiff by Dr. Katzman were a left
knee arthroscopy on February 21, 2014, and a right knee
arthroscopy on January 2, 2015.  (Tr. at 330-31, 451-53.)

On October 2, 2014, plaintiff sought treatment from Dr. Demetrois Mikelis, an orthopedic spine surgeon. (*Id.* at 339-342.) Dr. Mikelis opined that plaintiff should refrain from heavy lifting, carrying, or bending, so as to avoid exacerbating the tenderness and spasms in her spine. (*Id.* at 341.) Plaintiff visited Dr. Mikelis again in July 2016, and in September 2016. (*Id.* at 464-67.)

Plaintiff first filed an application for disability benefits pursuant to the Act in July 2014, listing the following conditions, with an onset date of September 4, 2013: bulging disc on back, carpel tunnel in the hands, surgery on both knees, pain in neck. (*Id.* at 113-16, 184-87, 216-24.) Plaintiff's application was denied on December 11, 2014. (*Id.* at 117-22.) On February 18, 2015, plaintiff requested a hearing before an ALJ. (*Id.* at 123-24.)

On September 11, 2016, plaintiff underwent a consultative orthopedic examination, performed by Dr. Ram Ravi. (*Id.* at 369-72.) Dr. Ravi opined that plaintiff had no limitations to sitting, and mild limitations to standing, walking, overhead activities, bending, pushing, pulling, lifting, and carrying. (*Id.* at 371.)

Plaintiff's hearing took place before ALJ Laura M. Olszewski on November 17, 2016, during which plaintiff and Alita Coles, a vocational expert, both testified. (*See generally id.*

at 71–103.)  On February 1, 2017, the ALJ determined that plaintiff was not disabled.  (*Id.* at 55–65.)  Thereafter, plaintiff requested review of the ALJ's decision, which the Appeals Council denied on March 14, 2018.  (*Id.* at 1–7.)  This action followed.  (*See generally* ECF No. 1., Complaint.)

## Standard of Review

A claimant must be "disabled" within the meaning of the Act to receive disability benefits.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant qualifies as disabled when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000).  The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner set forth a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of disabled.  *See* 20 C.F.R. § 404.1520.  The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant
> is not working, (2) that [s]he has a 'severe impairment,'
> (3) that the impairment is not one [listed in Appendix
> 1 of the regulations] that conclusively requires a
> determination of disability, and (4) that the claimant
> is not capable of continuing in [her] prior type of work,
> the Commissioner must find [her] disabled if (5) there
> is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003));

*accord* 20 C.F.R. § 404.1520(a)(4).  If the ALJ determines that

the claimant is or is not disabled at any step, the analysis

stops.

"The claimant has the general burden of proving . . .

his or her case at steps one through four of the sequential

five-step framework established in the SSA regulations."

*Burgess*, 537 F.3d at 128 (quotation and citations omitted).

"However, because a hearing on disability benefits is a

nonadversarial proceeding, the ALJ generally has an affirmative

obligation to develop the administrative record."  *Id.*

(quotation and alteration omitted).  "The burden falls upon the

Commissioner at the fifth step of the disability evaluation

process to prove that the claimant, if unable to perform her

past relevant work [and considering his residual functional

capacity, age, education, and work experience], is able to

engage in gainful employment within the national economy."

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).  If the Commissioner finds a combination of impairments, the Commissioner must also consider whether "the combined effect of all of [a claimant's] impairment[s]" establish the claimant's eligibility for Social Security benefits.  20 C.F.R. § 404.1523(c); *see also id.* § 416.945(a)(2).

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits.  42 U.S.C. §§ 405(g), 1383(c)(3).  The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).  Rather, "[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal

error.'"  *Burgess*, 537 F.3d at 127 (quoting *Shaw*, 221 F.3d at

131 (citation omitted)).  "The substantial evidence standard

means once an ALJ finds facts, we can reject those facts 'only

if a reasonable factfinder would *have to conclude otherwise*.'"

*Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)

(citations omitted, emphasis in original).  Inquiry into legal

error requires the court to ask whether "'the claimant has had a

full hearing under the [Commissioner's] regulations and in

accordance with the beneficent purposes of the [Social Security]

Act.'"  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

(quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## Discussion

### I.   The ALJ's Decision

The ALJ in this matter followed the five-step

sequential process, as mandated by the Act's implementing

regulations, to determine whether plaintiff was disabled.

At step one, the ALJ found that plaintiff had not

engaged in substantial gainful activity since September 4, 2013,

the alleged onset date.  (Tr. at 57.)  At step two, the ALJ

determined that plaintiff had the severe impairments of carpal

tunnel syndrome, degenerative disc disease, and status post-knee

surgery.  (*Id.*)  At step three, the ALJ determined that

plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of a

listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 57-58.)

At step four, the ALJ determined that plaintiff had the RFC to perform sedentary work.[1] (*Id.* at 58-64.) The ALJ determined that plaintiff could: lift and carry ten pounds occasionally; sit for six hours and stand or walk for two hours in an eight-hour workday; occasionally climb ramps and stairs; not climb ladders and scaffolds; occasionally balance and stoop; not kneel, crouch, or crawl; occasionally reach overhead and frequently reach in all other directions; frequently handle, finger, and feel; and that she required a cane to ambulate. (*Id.* at 58-59, 64.)

In reaching the RFC determination, the ALJ considered, *inter alia*, the medical opinion evidence proffered by the four doctors plaintiff visited between 2013 and 2016. (*Id.* at 62-63.) The ALJ first described Dr. Ravi's opinion from the report of plaintiff's consultative exam in September 2016. (*Id.* at 62.) According to the ALJ's decision, Dr. Ravi reported that plaintiff: had no sitting limitations; had mild limitations with standing, walking, overhead activities, bending, pushing,

---

[1] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

pulling, lifting, and carrying; should avoid driving and
squatting due to her right shoulder pain, neck pain, back pain,
bilateral knee pain, and bilateral carpal tunnel syndrome; could
lift and carry twenty pounds occasionally; could sit eight
hours, stand four hours, and walk four hours in an eight-hour
workday; required a cane to ambulate; could occasionally reach
and operate foot controls; could frequently handle, finger, and
feel; could occasionally climb stairs and ramps, but never
ladders or scaffolds; could never balance, stoop, kneel, crouch,
or crawl; and could never operate a motor vehicle or be exposed
to unprotected heights or moving mechanical parts, but could
occasionally tolerate exposure to humidity, wetness, dust,
odors, fumes, pulmonary irritants, extreme cold and heat, and
vibrations. (*Id.*) The ALJ accorded "great weight" to Dr.
Ravi's opinion, finding it to be consistent with the record as a
whole and with Dr. Ravi's examination, which suggested "minimal
sitting difficulties and a residual ability to perform sedentary
work with additional accommodations." (*Id.*)

The ALJ next summarized Dr. Khakhar's opinions. The
ALJ noted that "[t]hroughout the record, Dr. Khakhar opined
th[at] [plaintiff] was 'totally disabled.'" (*Id.*) The ALJ then
summarized Dr. Khakhar's November 2016 report, which opined that
plaintiff could: occasionally lift or carry five to ten pounds;
never reach; occasionally push and pull; occasionally grab,

turn, twist, handle, and hold objects; occasionally pick, pinch, and type and frequently finger; not engage in heavy lifting, moving around, or operating machinery; sit and stand or walk only one hour in an eight-hour workday; climb two steps, but otherwise never climb and never crouch, kneel, crawl, reach, push or pull; and occasionally balance and stoop. (*Id.* at 63.) The ALJ accorded "partial weight" to Dr. Khakhar's November 2016 opinion, finding it to be "inconsistent with the medical evidence of record and [plaintiff's] self-reported activities of daily living." (*Id.*) Further, the ALJ accorded "little weight" to Dr. Khakhar's opinions made on other occasions that plaintiff was "totally disabled," finding that such statements were "vague" and "conclusory," "fail[ed] to offer a function-by-function analysis of [plaintiff's] abilities and limitations," and were "on an issue reserved to the Commissioner" (i.e., whether plaintiff was disabled). (*Id.* at 62.)

The ALJ then considered Dr. Katzman's opinion from his November 2016 report, which was that plaintiff could: not lift or carry any weight or stand or walk; sit two hours in an eight-hour workday; never reach but could occasionally push, pull, hold objects, pick, pinch, and type; frequently grasp, turn, twist, and handle objects and finger; and could never climb, bend, balance, stoop, crouch, kneel, or crawl. (*Id.* at 63.) To these opinions, the ALJ accorded "partial weight." (*Id.*) The

10

ALJ found Dr. Katzman's opinion overall to be inconsistent with plaintiff's physical exams and "relatively conservative" treatment history. (*Id.*)  For example, the ALJ contended that there was no support for a finding that plaintiff could never stand or walk.  (*Id.*)

Lastly, the ALJ briefly summarized Dr. Mikelis' opinions from his July and September 2016 reports. (*Id.*)  Dr. Mikelis found that plaintiff was restricted from activities that exacerbated her symptoms, such as heavy lifting, carrying, or bending.  (*Id.*)  The ALJ assigned "great weight" to Dr. Mikelis's opinions, finding that they were consistent with plaintiff's restrictions from her known impairments.  (*Id.*)

Based on the foregoing RFC determination, the ALJ determined that plaintiff was unable to perform her past work as a security guard, mail sorter, and distribution packer. (*Id.* at 64.)

At step five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform despite her restrictions.  (*Id.*)  The testifying vocational expert, supplied with the above information, determined that plaintiff could perform the requirements of representative occupations such as addresser, call out operator, and order clerk.  (*Id.* at 65.)

## II.   Weighing of Medical Opinions

Plaintiff contends that the ALJ failed to follow the treating physician rule and appropriately weigh the medical opinion evidence and that, as a result, the ALJ's RFC determination was not supported by substantial evidence.

Under the regulations in place at the time plaintiff filed her claim, an ALJ was to "defer 'to the views of the physician who has engaged in the primary treatment of the claimant.'" *Cichocki v. Astrue*, 534 F. Appx. 71, 74 (2d Cir. 2013) (quoting *Green-Younger*, 335 F.3d at 106).[2] "However, '[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'" *Id.* (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). "Rather, 'a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the

---

[2] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule. *See id.* § 404.1527(c)(2). Plaintiff filed her claim on July 21, 2014. Accordingly, the court applies the treating physician rule in the instant case. *See, e.g.*, *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

claimant's] case record.'"  *Id.* (quoting 20 C.F.R. §
404.1527(c)(2)).

"An 'ALJ who refuses to accord controlling weight to
the medical opinion of a treating physician must consider
various factors to determine how much weight to give to the
opinion,' including: '(i) the frequency of examination and the
length, nature and extent of the treatment relationship; (ii)
the evidence in support of the treating physician's opinion;
(iii) the consistency of the opinion with the record as a whole;
(iv) whether the opinion is from a specialist; and (v) other
factors brought to the Social Security Administration's
attention that tend to support or contradict the opinion.'"  *Id.*
(quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).
"The ALJ must then 'comprehensively set forth his reasons for
the weight assigned to a treating physician's opinion.'"  *Id.*
(quoting *Burgess*, 537 F.3d at 129).  The regulations also
require that the ALJ "always give good reasons" in determining
the weight assigned to the claimant's treating source's opinion.
*See* 20 C.F.R. § 416.927(c)(2); *see also Schaal v. Apfel*, 134
F.3d 496, 503 (2d Cir. 1998).  The ALJ is not required to cite
each factor explicitly in the decision, but must apply the
substance of the rule.  *Halloran*, 362 F.3d at 32.

**A. The ALJ Failed to Identify "Good Reasons" for Giving Dr. Khakhar's and Dr. Katzman's Opinions Less Than "Controlling Weight"**

Dr. Khakhar, a physical medicine and rehabilitation specialist who treated plaintiff over the course of three years, was one of plaintiff's treating physicians.  The ALJ gave only "partial weight" to Dr. Khakhar's November 2016 opinion, and "little weight" to Dr. Khakhar's other opinions that plaintiff was "totally disabled."  (Tr. at 62-63.)  The ALJ neglected to sufficiently identify the specific evidence that undermined Dr. Khakhar's November 2016 opinion.

In the decision, the ALJ acknowledged the existence of the MRIs, x-rays, and physical examinations that Dr. Khakhar administered.  (*Id.* at 60-62.)  Nonetheless, the ALJ's decision did not set forth sufficiently good reasons for disregarding the evidence underlying Dr. Khakhar's opinion, which consisted of: a pre-arthroscopy MRI of plaintiff's left knee showing intermediate to high grade chondromalacia involving the lateral patellar facet with marrow edema and cystic changes (Stip. at 3); a pre-arthroscopy MRIs of plaintiff's right knee showing a high grade cartilage tear (*id.* 2, 8); an x-ray of plaintiff's lumbar and cervical spine showing straightening of the lumbar and cervical lordoses, indicative of spasm in both, and degenerative changes in the lumbar spine (*id.* at 2); an MRI of plaintiff's cervical and lumbar spine showing straightening of

the cervical spine and bulging discs in the lumbar spine (*id.* at 3); MRIs of plaintiff's hands showing cystic changes within the proximal aspect of the lunate in her left hand and a synovial/ganglion cyst volar to the radiocarpal joint in her right hand (*id.* at 6); and the numerous physical exams regularly documenting that plaintiff walked with an antalgic gait, required a cane, needed help getting on and off the exam table, and had tenderness and painful range of motion in her knees and spine (*see generally id.* at 1-14).

The ALJ did not cite to the opinion of any other doctor, or any record evidence, that contradicted the objective evidence underlying the conditions documented by Dr. Khakhar; conditions which could cause restrictions in sitting, standing, and reaching. Indeed, the other medical source findings appear to be largely consistent with Dr. Khakhar's opinion. Dr. Katzman performed chondroplasty of the patella and synovectomy in plaintiff's left knee and chondroplasty of the patella, lysis of adhesions, and synovectomy in plaintiff's right knee (*id.* at 5, 10), later finding stress fractures in both and advising her to "[k]eep off [her] legs as much as possible" (*id.* at 12). Dr. Mikelis found tenderness and spasms in plaintiff's cervical and lumbar spine with decreased range of motion and decreased motor strength in her lumbar spine with altered sensation. (*Id.* at 8.) At a later exam, Dr. Mikelis found essentially the same

condition of plaintiff's spine as well as decreased motor strength, and altered sensation in plaintiff's quadriceps and hamstrings bilaterally.  (*Id.* at 11.)  Dr. Ravi reported that plaintiff had reduced range of motion in her spine, shoulders, and knees, had an antalgic gait, could not walk on her heels and toes, could not squat past ten percent, and had difficulty getting on and off the exam table and her chair.  (*Id.* at 12.)

Nor did the ALJ cite any particular aspect of Dr. Khakhar's opinion that was inconsistent with plaintiff's daily activities or the medical evidence.  As an initial matter, a "[p]laintiff's reports of her daily activities by themselves are not substantial evidence that she was not disabled and are insufficient to justify according [a treating physician's] opinion limited weight," because a plaintiff "'need not be an invalid to be found disabled.'"  *Nusraty v. Colvin*, 213 F. Supp. 3d 425, 440 (E.D.N.Y. 2016) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)).  Here, plaintiff reported that she: struggled walking long distances on rough ground, could sit for only a half hour without pain, could not stand for long periods of time without pain in her back and knees, had difficulty bending and cleaning, and could not walk far without pain. (Stip. at 15-16.)  She said that her days consist of eating, washing up, and waiting for her husband to take her to physical therapy.  (*Id.*)  It is not clear from the ALJ's decision how Dr.

16

Khakhar's opinion is inconsistent with these limited daily activities.

Like Dr. Khakahr, Dr. Katzman, an orthopedic surgeon who treated plaintiff for three years, was also one of plaintiff's treating physicians.  The ALJ accorded Dr. Katzman's opinion only "partial weight," due primarily to what she found to be various inconsistencies.  (Tr. at 63.)

The court recognizes that Dr. Katzman's conclusion that plaintiff could not stand, walk, or carry any weight appears inconsistent with some of the more recent physical exams of plaintiff.  (*See, e.g.*, Stip. at 10, 12.)  However, other doctors concurrently documented severe impairments in their physical exams of plaintiff.  In Dr. Khakhar's latest report, he noted peripatellar tenderness, painful range of motion, and edema in both knees.  (*Id.* at 14.)  He also noted that plaintiff had cervical and lumbar myofascial derangements, cervical disc bulge and disc herniation, internal derangements and status post-knee arthroscopic procedure of both knees, and bilateral hand pain.  (Tr. at 472.)  Dr. Mikelis found, in his latest examination of plaintiff, tenderness and spasms in plaintiff's cervical and lumbar spine with decreased range of motion and decreased motor strength in plaintiff's lumbar spine, as well as decreased motor strength and altered sensation in plaintiff's quadriceps and hamstrings bilaterally.  (Stip. at 8, 11.)  Dr.

Ravi reported that plaintiff had reduced range of motion in her
spine, shoulders, and knees, had an antalgic gait, could not
walk on her heels and toes, could not squat past ten percent,
and had difficulty getting on and off the exam table or her
chair.  (*Id.* at 12.)  Finally, Dr. Katzman himself noted in his
most recent exam that plaintiff had bilateral knee stress
fractures, and recommended that she keep off of her legs as much
as possible.  (Tr. at 489.)  An inconsistency with one portion
of Dr. Katzman's opinion is not enough to limit the amount of
weight it was accorded; instead, the ALJ should have sought more
medical information.  *See Hartnett v. Apfel*, 21 F. Supp. 2d 217,
221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives inconsistencies in a
treating physician's reports, the ALJ bears an affirmative duty
to seek out more information from the treating physician and to
develop the administrative record accordingly.").

        Further, the ALJ improperly concluded that Dr.
Katzman's "relatively conservative" course of treatment
indicated that his opinion was entitled to less weight.  (Tr. at
63.)  An "opinion of the treating physician [is not] to be
discounted merely because he has recommended a conservative
treatment regimen."  *Burgess*, 537 F.3d 117 at 129.

        The court is mindful that the opinion of the
consultative physician, Dr. Ravi, presents inconsistencies with
Dr. Khakhar's and Dr. Katzman's opinions.  Dr. Ravi opined that

18

plaintiff could carry twenty pounds occasionally, sit for six hours at a time, stand and walk for three hours at a time, and occasionally reach.  (Tr. at 62.)  However, an ALJ "cannot rely solely on [the] RFCs [of the consultative examiners] as evidence contradicting the treating physician RFC . . . because an inconsistency with a consultative examiner is not sufficient, on its own, to reject the opinion of the treating physician." *Cammy v. Colvin*, No. 12-cv-5810, 2015 WL 6029187 *14 (E.D.N.Y. Oct. 15, 2014) (quotation omitted).

On remand, if the ALJ determines that the opinions of Dr. Khakhar and Dr. Katzman are entitled to less than controlling weight, the ALJ must provide sufficiently "good reasons" for discounting the objective evidence underlying their opinions, and more thoroughly explain any inconsistencies between their opinions and the other evidence in the record. *See Burgess*s, 537 F.3d at 130-31 (remand appropriate where ALJ did not adequately grapple with "objective evidence" supporting treating physician's opinion).  Moreover, the ALJ must explain why Dr. Ravi's opinion, based on a single consultative examination of plaintiff, is entitled to greater weight than the opinions of physicians who treated her over the course of multiple years.  *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination.")  The ALJ

is reminded that treating physicians' assessments are "entitled
to some extra weight, even if contradicted by substantial
evidence, because the treating source is inherently more
familiar with a claimant's medical condition than are other
sources." *Harris v. Berryhill*, No. 17-cv-3968, 2018 WL 3966237,
at *1 (E.D.N.Y. Aug. 17, 2018) (quoting *Jones v. Sullivan*, 949
F.2d 57, 59 (2d Cir. 1991)).

### B. The ALJ Misconstrued the Opinions That Were Accorded "Great Weight"

The ALJ assigned "great weight" to both Dr. Ravi's
opinion and Dr. Mikelis's opinion.  On remand, even if the ALJ
again decides to give the opinions of Dr. Ravi and Dr. Mikelis
greater weight than those of Dr. Khakhar and Dr. Katzman, the
ALJ must fully incorporate all aspects of their opinions into
the RFC determination.

The ALJ characterized Dr. Ravi's opinion as finding
that plaintiff had "mild limitations" with "overhead activities,
bending, pushing, pulling, lifting, and carrying," based on Dr.
Ravi's observation that she could "[o]casionally" reach overhead
or in other directions.  (Tr. at 63, 375.)  Despite this
limitation, the ALJ found that plaintiff was able to perform
sedentary work, in part because she could "frequently reach in
all directions."  (*Id.* at 58-59.)  That conclusion does not

follow from Dr. Ravi's opinion, which was that she could only occasionally reach in other directions.  (*Id.* at 375.)

The ALJ also accorded Dr. Mikelis's opinion "great weight," and noted that Dr. Mikelis opined that plaintiff "was restricted from any activity that exacerbated her symptoms, such as . . . bending." (*Id.* at 63.)  Dr. Mikelis's opinion was consistent with plaintiff's statement that she could not "bend to put clothes in [the] washer [and] dryer."  (*Id.* at 232.) Nonetheless, despite purporting to accord Dr. Mikelis's opinion "great weight," the ALJ did not mention plaintiff's limitation with respect to bending when finding that plaintiff could perform sedentary work.  (*Id.* at 58-59.)

An "ALJ may not 'pick and choose evidence which favors a finding that the claimant is not disabled.'" *Clarke v. Colvin*, No. 15-cv-354, 2017 WL 1215362, at *9 (S.D.N.Y. Apr. 3, 2017) (quoting *Rodriguez v. Astrue*, No. 07-cv-534, 2009 WL 637154, at *25 (S.D.N.Y. Mar. 9, 2009)).  Accordingly, on remand, the ALJ should incorporate (1) Dr. Ravi's opinion that plaintiff can only occasionally reach in all directions, and (2) Dr. Mikelis's opinion that plaintiff should not bend, into the RFC determination.

## Conclusion

Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal

standard." *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999)
(quoting *Pratts v. Charter*, 94 F.3d 34, 39 (2d Cir. 1996).
Remand is particularly appropriate where further findings or
explanation will clarify the rationale for the ALJ's decision.
*Pratts*, 94 F.3d at 39.  Here, the ALJ failed to adequately
explain the decision to accord less weight to two of plaintiff's
treating physicians, Dr. Khakhar and Dr. Katzman.  Moreover, the
ALJ failed to incorporate all aspects from the opinions of Dr.
Ravi and Dr. Mikelis into the RFC determination.

    For the reasons set forth above, the court GRANTS
plaintiff's motion for judgment on the pleadings, DENIES
defendant's cross-motion for judgment on the pleadings, and
REMANDS this case for further proceedings consistent with this
Memorandum and Order.

    The Clerk of Court is respectfully directed to enter
judgment in favor of plaintiff and close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
           June 22, 2020

                         /s/
                  Hon. Kiyo A. Matsumoto
                  United States District Judge